IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JULIO CESAR ORTIZ, | ) |
| Petitioner, | ) No. 12 C 3634 |
| v. | ) Hon. Virginia M. Kendall |
| ZULIMA JUAREZ MARTINEZ | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Petitioner Julio Cesar Ortiz ("Ortiz") brings this Motion for a New Trial pursuant to Fed. R. Civ. P. 59, after his petition for the return of his minor children, L.O. and A.O., filed under the Hague Convention of the Civil Aspects of International Child Abduction, T.I.A.S. No. 11670 (July 1, 1988), was denied. (Dkt. No. 72 at 2, 24). For the following reasons, Ortiz's Motion for a New Trial is denied.

## BACKGROUND

The International Child Abduction Remedies Act (the "Act"), 42 U.S.C. § 11601 *et seq.* implements the Convention and allows a person to petition a United States federal court to order the return of their child if the child has been wrongfully removed or abducted to the United States. 42 U.S.C. § 11603(b). Ortiz brought a petition under the Hague Convention of the Civil Aspects of International Child Abduction, T.I.A.S. No. 11670 (July 1, 1988), *available at* 1988 WL 411501 (the "Convention"), for the return of his two minor children, L.O. and A.O., who both currently reside in the United States with their mother Zulima Juarez Martinez ("Juarez"). (Dkt. No. 15 at 2.) Respondent mother raised a defense under article 13 of the Convention,

1

claiming that the children faced grave risk of harm because Ortiz had previously sexually abused his five-year-old daughter. (Dkt. No. 18 at 12.) Additionally, Juarez claimed the children desired to remain in the United States with her instead of being returned to Mexico with their father.

In order to seek return of children abducted to the United States, a Petitioner must show by a preponderance of the evidence that the child was wrongfully removed. 42 U.S.C. § 11603(e)(1)(A).

> A removal is considered wrongful where the Petitioner can show:
> a. A breach of rights of custody attributed to a person...under the law of the State where the child was habitually resident immediately before removal.
> b. At the time of removal or retention those rights were actually exercised…or would have been so exercised but for the removal or retention. Art. 3, Convention.

However, "while a parent…has a right of custody and may seek a return remedy, a return order is not automatic. Return is not required if the abducting parent can establish that a Convention exception applies." *See* Art. 13(a), Convention; *Abbott v. Abbott*, 560 U.S. 1, 22 (2010). If the Petitioner successfully demonstrates removal is in order, then the burden shifts to the Respondent to prove, by clear and convincing evidence, that the child should not be removed subject to one of the four defenses under the Convention. *See* Arts. 12, 13, 20; 42 U.S.C. § 11603(e)(2)(A)-(B). The four defenses include:

> (1) Temporal qualifications. Under Article 12, the Court is not obligated to return a child when Convention proceedings commenced a year or more after the alleged removal or retention and it is demonstrated that the child has settled into his new environment.
> (2) Non exercise of custody rights. Under Article 13, the Court may deny an application for return of the child if the person having the care of the child was no actually exercising the custody rights at the time of removal.
> (3) Grave risk of harm/intolerable. Under Article 13, a Court in its discretion need not order a child returned if there is a grave risk that return would expose the child to physical harm or otherwise place the child in an intolerable situation.
> (4) Protection of human rights. Under Article 20, the Court may refuse the return of a child if it would not be permitted by the fundamental principles of the

requested State relating to the protection of human rights and fundamental freedoms.

Finally, there is one exception that the Respondent need not assert as a defense, but can be invoked at the discretion of the Court; child's preference. Under the third unlettered paragraph of Article 13, the Court may decline to order the child returned if the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of the child's views.

Procedural History

This Court found that while Ortiz demonstrated by a preponderance of the evidence that L.O. and A.O. were wrongfully removed to the United States by Juarez, the children were in grave risk of harm if they returned to their native county, Mexico, and that the child L.O. had attained an age and maturity at which it is appropriate to take into account of his child's views, that he desired to remain with his mother in the United States as an independent factor for denial. (Dkt. No. 72 at 2.)

**STANDARD OF REVIEW**

A motion for new trial may be granted at the court's discretion "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court."[1] Fed.R.Civ.P. 59(a)(1)(B); *Latino v. Kaizer*, 58 F.3d 310, 314 (7th Cir. 1995) (the Court found that the "district court has great discretion in determining whether to grant a new trial.") Under Federal Rule of Civil Procedure 59(a), the district court "is in a unique position to rule on a new trial motion"

---

[1] Because the court has discretion to grant a Motion for a New Trial, "a district court need not write a comprehensive opinion explaining why it denied a motion for a new trial; indeed, the judge need not give an explanation of any kind." *Dunn v. Truck World, Inc.,* 929 F.2d 311, 313 (7th Cir. 1991).

because it witnessed the presentation of the evidence and observed the credibility of the witnesses. *Research Sys. Corp. v. IPSOS Publicite*, 276 F.3d 914, 921 (7th Cir. 2002).

When a district court has made findings of fact, such findings are "entitled to great deference and shall not be set aside unless they are clearly erroneous." *See also Levenstein v. Salafsky*, 414 F. 3d 767, 773 (7th Cir. 2005); *Gaffney v. Riverboat Servs. of Indiana, Inc.*, 451 F.3d 424, 447-48 (7th Cir. 2006). This is especially true when a district court has made credibility determinations after a hearing. *Id.; see also Carnes Co. v. Stone Creek Mech., Inc.*, 412 F.3d 845, 848 (7th Cir. 2005) ("a trial court's credibility determination can virtually never amount to clear error.")

In this case, the Petitioner claims that a new trial is warranted for two reasons: (1) because the evidence that L.O. and A.O. were at a grave risk of danger because Ortiz sexually abused A.O was insufficient under a clear and convincing standard and (2) because the Court considered the wishes of the child sua sponte as outlined in Article 13 (2)(d) of the Convention.

### A. Hague Convention Article 13(c) "Grave Risk of Harm" Exception

According to the Convention, the "return of the child is not required when 'there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.'" *Id.* This exception is narrowly construed by the courts. The Respondent must present clear and convincing evidence of grave harm. *See Norinder v. Fuentes*, 657 F.3d 526, 535 (7th Cir. 2011). The risk of harm must be more than serious; it must be *grave*, meaning that return would expose the child to "physical or psychological harm" or would "otherwise place the child in an intolerable situation." Art. 13(b), Convention; *Van de Sande v. Van de Sande*, 431 F.3d 567, 572 (7th Cir. 2005) (reversing the district court's grant of return when Respondent showed by clear and convincing evidence that

4

the children faced grave risk of harm when father threatened to kill "everybody" including children.)

The Court in *Norinder* held that while the Convention contemplates comity among nations, "the safety of children is paramount." *Norinder*, 657 F.3d at 535 (citing *Van de Sande v. Van de Sande,* 431 F.3d 567, 572 (7th Cir. 2005)). The grave risk of harm "provision was not intended to be used by defendants as a vehicle to litigate (or relitigate) the child's best interests. Only evidence directly establishing the existence of a grave risk that would expose the child to physical or emotional harm or otherwise place the child in an intolerable situation is material to the court's determination". Art. 13(c)*,* Convention. Thus, determining whether the child faces a grave risk of harm requires a fact based inquiry.

Here, the court conducted a three-day evidentiary hearing. (Dkt. No. 72 at 2.) Petitioner challenges the sufficiency of the evidence weighed by the court, arguing that the Respondent failed to offer documentary or physical evidence of sexual abuse. (Dkt No. 77 at 2.) However, one does not have to provide documentary or physical evidence of sexual abuse when there is testimony that is corroborated by multiple witnesses. *See Sylvester v. SOS Children's Villages Illinois, Inc.*, 453 F.3d 900, 903 (7th Cir. 2006).

The Court heard testimony from all the witnesses, including Dr. Machabanski, and credited the testimony of Juarez, which was corroborated by A.O., who was a bright child, cooperative in answering questions from the Court, and demonstrated an understanding of telling the truth. (Tr. at 175-177.) Specifically, during the court's interview with A.O., she stated that her father had done something bad "for not to tell mommy. It was a secret." (Tr. at 156.) When asked what was bad, she replied with words and gestures that he put his finger in her vaginal area while she was showering with him on more than one occasion. (Tr. at 155.) Further, during the

5

court's interview with Juarez, she stated that she noticed recurrent rashes on A.O.'s vaginal area shortly after she was born, so she took her to see a doctor who prescribed medication for diaper rash. (Tr. at 216-217.) However, the rashes reappeared in the summer of 2010. (Tr. at 259.) Additionally, when A.O. was about three years old, Juarez walked in on Ortiz when he was bathing his daughter. (Tr. at 215.) Juarez remembers that A.O. and Ortiz were both naked, and that A.O. was standing against the shower wall and Ortiz was kneeling in front of her with his right hand between her legs without soap or a towel. (Tr. at 216, 238.) About a week after that, Juarez overheard A.O. telling her father not to touch her in her private parts anymore. (Tr. at 217-18.)

This Court "having seen the presentation of evidence and observed the witnesses, is in a unique position to rule on a new trial" and therefore, will not set aside its findings of fact unless they are clearly erroneous. *See* Fed.R.Civ.P. 52(a)(6); *Research Sys. Corp. v. IPSOS Publicite,* 276 F.3d 914, 921 (7th Cir. 2002). This Court performed its duty as fact-finder during the evidentiary hearings and *in camera* interviews with the witnesses, and found that the children faced a grave risk of psychological and physical harm in Mexico. *See e.g.*, *Khan v. Fatima*, 680 F.3d 781, 785 (7th Cir. 2012) (concluding that the 'civil rules require the judge to "find the facts specially and state his conclusions of law separately' when he is the trier of fact. He is not excused from this duty in a proceeding under the Hague Convention. The trier of fact must decide whom to believe…on the basis of the coherence and plausibility of the contestants' testimony…").

The Petitioner claims that the Respondent remained in the same home as Petitioner after she witnessed the alleged abuse, and that such "self-serving statements tell a story that strains credulity." (Dkt. No. 77 at ¶18.) Petitioner also accuses Respondent of having sufficient time to

coerce A.O. into falsely testifying about the alleged abuse. (*Id.* at ¶19.) The record supports the unique form of manipulation inflicted upon the Respondent by holding the family's passports and not allowing her to flee or to report to public officials with who he was uniquely affiliated. This unique manipulation is more than adequately addressed in the record and explains any delay in reporting the abuse which was done immediately upon arrival in a safe place. As the fact finder, the Court properly weighed the evidence and credibility of the witnesses and found that the children would face a grave risk of harm if ordered to return to Mexico. (Dkt. No. 72 at 2, 24.) Petitioner has failed to present any new facts or law to change the Court's holding.

### B. Hague Convention Article 13(d) "Children's Preference" or "Wishes of the Child" Exception

Courts have the discretionary authority to decline the return of a child "if the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of the child's views…This discretionary aspect of Article 13 is especially important because of the potential for brainwashing of the child by the alleged abductor." Art. 13(d), Convention.

Here, the Petitioner claims that the Court erred when it raised this exception *sua sponte*, and that the burden was on the Respondent to raise such an exception. (Dkt. No. 77 at 4.) However, Petitioner ignores the language of the Convention, which specifically grants the court discretionary authority to avoid return based on the child's preference. This Court did not err by exercising its discretionary authority.

Whether a child is mature enough to have his or her views considered is a factual finding, and as such, the district court is entitled to deference. *See Friedrich v. Freidrich,* 78 F.3d 1060, 1064 (6th Cir. 1996) (findings of fact are reviewed for clear error). Even if the Petitioner challenged this Court's factual findings, those findings will not be overturned unless there was

clear error. *See* Fed.R.Civ.P. 52(a)(6). In this case, there are no errors, as L.O. expressed his preference to remain in the United States instead of Mexico. (Tr. at 107-142.) The Court further made thorough credibility findings regarding L.O.'s maturity to reach its conclusion.

## **CONCLUSION**

Petitioner has raised no new facts, laws, or reasoning that were not raised previously and therefore the motion for a new trial is denied.

_____
Virginia M. Kendall
Northern District of Illinois

Date: April 11, 2014